1
2
3
4
5
6
7
8              **UNITED STATES DISTRICT COURT**
9              **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   DELANO LARTEL WRIGHT,                     CASE NO. 04cv1873-IEG(POR)

12                              Plaintiff,     Order Denying Defendants' Motion
                                               for Summary Judgment
         vs.
13

14   DIRECTOR OF CORRECTIONS, et al.,

15                              Defendants.

16          Defendants R. Davis and R. Johnson move the Court for entry of summary judgment on

17   Plaintiff's First Amendment retaliation claims against them.   Plaintiff has filed an opposition, and

18   Defendants have filed a reply.  The Court previously found this motion appropriate for submission

19   on the papers and without oral argument. For the reasons set forth herein, the Court DENIES

20   Defendants' motion.

21                              ***Factual Background***

22          The relevant facts surrounding Plaintiff's retaliation claim against Defendants Davis and

23   Johnson are as follows. On November 22, 2003, while Plaintiff was an incarcerated at Calipatria

24   State Prison, he and his cellmate, Mr. Weathers, were allegedly assaulted by correctional officers.

25   [First Amended Complaint ("FAC"), Doc. 54, pp. 6-9.] Plaintiff immediately submitted a written

26

27

28

1  grievance about the incident. [Deposition of Delano Wright ("Wright Depo"), Exhibit 1 to

2  Plaintiff's Opposition, pp. 48-49, 54[1].]

3      A week or two[2] later, Defendant Johnson escorted Plaintiff to the programming office for a

4  videotape interview by Defendant Davis regarding the November 22 incident. [Johnson Decl., ¶ 4;

5  Davis Decl., ¶ 4.]   According to Defendants, before the videotaped interview began, Plaintiff

6  spontaneously stated he had made up the allegations regarding the correctional officers' use of

7  force. [Johnson Decl., ¶ 4 and Exhibit A; Davis Decl., ¶ 4.] Plaintiff, however, asserts that when he

8  and Weathers told Defendants Davis and Johnson about the earlier incident, Defendant Davis

9  responded by telling him he would be put in Administrative Segregation ("Ad Seg") unless he

10  took back his statements. [Wright Depo., p. 54.]

11      Lieutenant Davis, he says, well, if you don't take back these statements that you're
         making against my officers, we're going to put you in Ad Seg; you're going to lose
12       your property, and, you know– basically he was going to F us around. That's what I
         got out of it.

13  [Id.]

14

15      Wright interpreted Davis's statements as an explicit threat to retaliate against him if he did

16  not recant his allegations against the other correctional officers:

17      A.    And Davis said if I don't take back what I'm saying about his officers, I'm going to
              the hold.
18      Q.    Okay. Do you consider that a threat?
        A.    Yes. Why am I going to the hole? I didn't do anything.
19      Q.    And did Davis make that threat because of your appeal or why did he make that
              threat?
20      A.    He said, "If you don't take back what you're saying about my officers, you're going
              to the hold." So I don't know. What I'm saying about his officers is, they choked
21            me. That's all I'm saying.
        Q.    Okay. And he didn't stop you from making those allegations, though?
22      A.    No. He just said, "You're going to the hold if you do this camera – if you get on
              camera saying this about my officers, you're going to the hole. Your property is
23            going to get lost. You're going to have to buy all of that over again. Oh, you know
              how it happens."

24  _____

25      [1]As required by the Local Rules, Plaintiff's exhibits are sequentially numbered at the
    bottom center of each page. In addition, the file-stamp header from CM/ECF inserts a page
26  number at the upper right.  However, for ease of reference for the record on appeal, the Court here
    refers to the page of the deposition transcript, found at the bottom right corner of each page.

27      [2]Plaintiff stated in his deposition that the interview occurred two weeks later, on
    December 6 [Wright Depo, p. 54] , while both Defendants state in their declarations that the
28  interview occurred one week later, on November 29 [Declaration of R. Johnson ("Johnson Decl."),
    ¶ 4; Declaration of R. Davis ("Davis Decl."), ¶ 4.] The actual date of the interview is not material.

[Id., pp. 67-68.] Plaintiff consulted with Weathers, and the two of them decided it was not worth going to Ad Seg in order to pursue their appeal of the correctional officers' use of force. [Wright Depo., p. 56.] Therefore, they both signed a 128-G chrono recanting the allegations. [Id., p. 57; Davis Decl., ¶ 4; Johnson Decl, ¶ 4.]

Nonetheless, Defendant Davis proceeded to take a videotape interview of both Plaintiff and Weathers. [Wright Depo, p. 57.]  Davis indicates he did the interviews, and voided the 128-G chronos, because Plaintiff and Weathers stated they were only recanting their earlier allegations so that they would not have to go to Ad Seg. [Davis Decl., ¶ 4.] After the interview, Plaintiff and Weathers were returned to their cell and were not put in Ad Seg. [Davis Decl., ¶ 7; Wright Depo, pp. 57-59.]

### *Procedural History*

Plaintiff filed his FAC on May 31, 2006.  Plaintiff alleged the statements made by Defendants Davis and Johnson constituted cruel and unusual punishment and violated due process. [FAC, Count 2.] In ruling on Defendants' motion to dismiss the FAC, however, the Court construed Plaintiff's claim as a retaliation claim arising under the First Amendment. [Doc. 63, pp. 6-7.]

Defendants moved for summary judgment on all of Plaintiff's claims, and the Court granted such motion.  In granting summary judgment, however, the Court omitted to address Plaintiff's First Amendment retaliation claim against Defendants Davis and Johnson.  The Ninth Circuit reversed and remanded the grant of summary judgment, in part to allow the Court the opportunity to address Plaintiff's retaliation claim in the first instance.

### *Summary Judgment Standard*

Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A material issue of fact is a question a trier of fact must answer to determine the rights of the parties under the applicable substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." Id.  The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party.  Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003).  However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment.  Id.; Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008).

### *Discussion*

The First Amendment protects Plaintiff's right to file prison grievances.  Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing Rhodes v. Robinson, 408 F.3d 559, 566 (9th Cir. 2005)).  "Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of 'clearly established law'." Id. (citing Rhodes, 408 F.3d at 566).  The Ninth Circuit has identified five basic elements of a prisoner claim for retaliation:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

Rhodes, 408 F.3d at 567-68. In their motion for summary judgment, Defendants argue Plaintiff has failed to show they took any adverse action taken against him. Even assuming their statements to Plaintiff were "adverse action," Defendants argue such action did not chill the exercise of his First Amendment rights. Finally, Defendants argue their statements to Plaintiff reasonably advanced legitimate correctional goals.

### *1.      Did Defendants take adverse action against Plaintiff?*

Defendants pose two arguments related to whether Davis's statements to Plaintiff constitute adverse action. First, Defendants argue there was no adverse action as a matter of law because the "mere naked threat" that Plaintiff would be put in Ad Seg and have his property taken away did not materialize. Second, Defendants argue as a factual matter that section 3335(a) of the California Code of Regulations, Title 15, requires an inmate be removed from the general population and put in Ad Seg where he alleges misconduct against a correctional officer:

> When an inmate's presence in an institution's general inmate population presents an immediate threat to the safety of the inmate or others, endangers institution security or jeopardizes the integrity of an investigation of an alleged serous misconduct or criminal activity, the inmate shall be immediately removed from general population and placed in administrative segregation.

04cv1873

1    Thus, Davis was merely informing Plaintiff what would happen during the investigation of his

2    claims of misconduct by correctional officers. [Davis Decl., ¶ 6; Johnson Decl., ¶ 5.] Defendants

3    argue they, in fact, helped Plaintiff and Weathers remain in their assigned housing unit after the

4    videotaped interview.

5           The Ninth Circuit has explicitly rejected Defendants' legal argument regarding of the level

6    of "adverse action" necessary to survive summary judgment in a prisoner retaliation case.  In

7    Brodheim, the court held "the mere *threat* of harm can be an adverse action, regardless of whether

8    it is carried out because the threat itself can have a chilling effect."  584 F.3d at 1270; see also

9    Rhodes, 408 F.3d at 568.  The court explained "[t]he power of a threat lies not in any negative

10   actions eventually taken, but in the apprehension it creates in the recipient of the threat."  Id.  Here,

11   the fact Plaintiff was not placed in Ad Seg after the videotape interview does not alleviate the

12   chilling effect of Davis's statements, viewed in the light most favorable to Plaintiff as required on

13   this motion for summary judgment.

14          Furthermore, there exists a genuine issue of material fact regarding whether Defendants

15   were simply informing Plaintiff of the potential consequences of making an allegation of staff

16   misconduct, or threatening him.  Plaintiff testified at his deposition that Davis's statements were

17   not merely "informational" -- "He just said, 'You're going to the hold if you do this camera – if

18   you get on camera saying this about my officers, you're going to the hole. Your property is going

19   to get lost. You're going to have to buy all of that over again. Oh, you know how it happens'."

20   [Wright Depo., p.68.] This dispute of fact precludes summary judgment.

21          2.      *Did Defendants' conduct have a chilling effect?*

22          Similarly, Defendants cannot demonstrate the absence of a genuine issue of material fact

23   regarding the chilling effect of Davis's statements.  Defendants argue the fact Plaintiff went

24   forward with the videotaped interview precludes him from demonstrating Davis's statements had a

25   chilling effect.  Again, however, the Ninth Circuit has rejected this argument.  "[A]n objective

26   standard governs the chilling inquiry; a plaintiff does not have to show that 'his speech was

27   actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill *or* silence

28   a person of ordinary firmness from future First Amendment activities'."  Brodheim, 584 F.3d at

1271.  The Court cannot say as a matter of law that an ordinary prisoner threatened with being put in Ad Seg and having his property taken away and destroyed would not be inhibited in his desire to pursue a grievance alleging he was assaulted by correctional officers.

### 3.      *Legitimate Penological Interest*

Finally, the Court rejects Defendants' argument that Davis had a legitimate penological interest in informing Plaintiff and Weathers they would be put into Ad Seg if they went forward with the videotaped interview.  Certainly there is a legitimate penological interest underlying title 15 of the California Code of Regulations, section 3335(a), which provides that inmates be removed from the general population if their safety or the safety of the institution is compromised.  However, Plaintiff has testified that Davis went beyond merely informing him of the provisions of § 3335(a), and instead explicitly threatened him.  Defendants have proffered no legitimate penological reason why Davis would threaten Plaintiff, including telling him that he would lose his property.

### 4.      *Qualified Immunity*

Even where a plaintiff establishes violation of his constitutional rights, an officer is entitled to qualified immunity unless plaintiff demonstrates the officer's conduct violated clearly established federal right. Saucier v. Katz, 533 U.S. 194, 201 (2001); see also Rhodes, 408 F.3d at 569 (discussing qualified immunity in the context of prisoner claims of retaliation).  Defendants argue they are entitled to qualified immunity because the state of the law in November of 2003 did not make it clear that they would violate Plaintiff's First Amendment right by making a "mere naked threat" to put Plaintiff in Ad Seg and take his property if he went forward with the videotaped interview.  Defendants cite Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987), and argue that under the state of the law at the time they could not have known their verbal threats would violate Plaintiff's rights.

Defendants' argument is foreclosed by the Ninth Circuit's opinion in Rhodes.  In Rhodes, defendants argued it was not clearly established that a prisoner has the right to be free from retaliatory conduct that does not, in fact, chill or deter the prisoner's exercise of his constitutional rights.  In rejecting defendants' argument, the court stated "[w]e think our case law is abundantly

1   clear that the infliction of harms other than a total chilling effect can establish liability for such

2   conduct ...."  408 F.3d at 570 (citing <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995)).

3   Furthermore, the court held that conditioning qualified immunity in a prisoner retaliation case

4   upon the actual harm inflicted "is flatly inconsistent with the concept of qualified immunity in the

5   first instance."  <u>Id</u>. at 571 (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).

6          In this case, Plaintiff alleges that as a result of Defendants' threats, both he and Weathers

7   decided to abandon their prison grievance regarding the use of force by correctional officers.  Even

8   though Plaintiff was not placed in Ad Seg after he went forward with the interview, Plaintiff had

9   the right to be free from the threat of retaliation based upon his pursuit of the prison grievance

10  process.  Under clearly established law Defendants' violated Plaintiff's rights by threatening to put

11  him in Ad Seg and take his property if he proceeded with interview.  Defendants are not entitled to

12  qualified immunity.[3]

13                                    ***Conclusion***

14         For the reasons set forth herein, the Court finds there are genuine issues of material fact

15  precluding summary judgment on Plaintiff's claims of retaliation against Defendants Davis and

16  Johnson.  Defendants' motion is DENIED.

17         **IT IS SO ORDERED**.

18  **DATED:  December 21, 2011**

19

20         **IRMA E. GONZALEZ, Chief Judge**
           **United States District Court**

21

22         [3]Plaintiff argues Defendants are precluded from asserting qualified immunity with regard
    to Plaintiff's retaliation claim because they failed to assert it at any prior time in this action.  In

23  particular, although Defendants raised the defense in their answer to the FAC [Doc. 66, p.3],
    Defendants did not raise qualified immunity in their original summary judgment brief [Doc. 71],

24  and also did not raise the issue on appeal or seek affirmance on that basis.  Although the Ninth
    Circuit has not addressed the matter, other Circuits have held that the trial court has discretion to

25  find a waiver of qualified immunity if the defendant fails to exercise due diligence or asserts the
    defense for dilatory purposes.  <u>English v. Dyke</u>, 23 F.3d 1086, 1090 (6th Cir. 1994); <u>Guzman-</u>

26  <u>Rivera v. Rivera-Cruz</u>, 98 F.3d 664, 668 (1st Cir. 1996); <u>Eddy v. Virgin Islands Water and Power</u>
    <u>Authority</u>, 256 F.3d 204, 209-210 (3d Cir. 2001); <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1306 (11th

27  Cir. 2001).  The Ninth Circuit, however, has held that the district court has discretion to permit
    successive motions for summary judgment, even after a trial, on the issue of qualified immunity.

28  Therefore, the Court concludes Defendants have not waived their right to raise the matter at this
    point in the proceedings.

04cv1873